IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Paka Apparel, Inc., | |
| Plaintiff, | |
| v. | No. [_____] |
| | JURY TRIAL DEMANDED |
| Pacas, Inc. and Gekks, Inc., | |
| Defendants. | |

## COMPLAINT

Plaintiff Paka Apparel, Inc. ("Plaintiff" or "Paka"), by and through its undersigned counsel, hereby brings the present action against Pacas, Inc. and Gekks, Inc. ("Defendants" or "Pacas") seeking an injunction, damages, and other appropriate relief to stop Defendants from violating Paka's trademark rights and damaging Paka's good name and reputation with the public. Paka states and alleges as follows:

## I. INTRODUCTION

1.      Paka was founded by Kris Cody ("Cody") in 2016 while a neuroscience student at the University of Virginia. During a trip to Cusco, Peru in 2015, Cody met a young mother and her children as they walked from their rural home to the local market to sell their handmade goods. At the market, Cody purchased a hand-knit alpaca wool sweater made by a local woman weaver. Cody was impressed by the skill required to weave the sweater and decided to purchase it. When Cody returned from Peru, two thoughts remained with him: first, how hard the local woman in Peru worked to create beautiful hand-knit alpaca wool goods, and second, how limited the economic opportunities were for these women, many of whom lived in poverty.

1

2.     In 2016, Cody purchased a one-way ticket to Peru to learn as much as he could about the artisans who worked late into the night to weave fine alpaca goods and who woke early each morning to walk to the local market to sell those goods. Over time, Cody developed relationships with local families and weavers, and eventually he moved into a small apartment above a local weaver and her family.

3.     Each morning over breakfast, Cody and local weavers worked together to turn an idea into a business plan. The plan was straightforward, but would have transformative impacts on the lives of the women weavers of Cusco: Cody would help the weavers expand their market into the United States where the weavers could sell their goods to a bigger customer base and earn more money in exchange for their high-quality products, and Cody would ensure that profits from any sales went directly back to the women of Cusco. That business would be named "Paka Apparel" as a nod to high-quality alpaca wool which has been used by native Inca women for thousands of years.

4.     In 2016, Paka launched a new e-commerce site, www.pakaapparel.com (the "Paka Domain Name") to provide customers with the renewed convenience of shopping online at Paka's online store ("the Paka Online Store"). As of today, the Paka Online Store offers more than 100 products online and is visited by more than 150,000 people every month.

5.     In 2017, Paka launched a Kickstarter campaign to market, sell and bring attention to an alpaca-wool sweater design made by the Peruvian women weavers. The campaign raised almost $350,000 in 30 days with no paid advertising. Following the success of the initial Kickstarter campaign, Paka began selling the weavers' goods throughout the United States and the world.

6.      Paka has continued to stay true to its initial mission of empowering local Quechua weavers in Peru. Today, Paka employs over 100 local women weavers in Cusco and throughout Peru, paying them four times the family living wage. Paka is a Certified B Corp with an Impact Score of 124.8, and was awarded Best for the World in 2021.[1]

7.      Paka partners with the Ministry of Vulnerable Populations, a state-backed NGO, to provide a violence-free outlet and support system for women who have experienced domestic violence and sexual abuse. Paka also donates 2% of all its revenue to finance college tuition for (so far) six high-achieving and underprivileged Peruvian young women (the "Paka Scholars"), and provides full-time supervision and a trained psychologist alongside the Paka Scholars.

8.      Paka's success, its mission, and its goodwill is embodied in its well-known, federally registered trademark, "PAKA."

9.      However, all of that goodwill, and Paka's reputation is under threat from an entity attempting to profit off of Paka's mark and reputation. In particular Defendants' have launched an online retail business operating through a fully interactive website-based Internet store (the "Infringing Store") that is operated by Defendants and is trading upon Paka's reputation and goodwill by using infringing versions of Plaintiff's federally registered trademark.

10.      The Infringing Store, which is operating through Defendants' domain name www.pacas.com (the "Infringing Domain Name"), contains confusingly similar variations of Paka's federally registered trademark for PAKA.

11.      The Infringing Store operated by Defendants at the Infringing Domain Name is advertising, offering for sale, and purporting to sell the same types of products as are sold by

---

[1] *Paka*, B LAB, https://www.bcorporation.net/en-us/find-a-b-corp/company/paka (last visited April 13, 2022).

Paka, using confusingly similar variations of Paka's trademarks in a manner which is likely to cause consumers to mistake the Infringing Store for Paka's own online store. The Infringing Store features content and layout copied directly from Paka's own online store, with only the most superficial of changes made to Paka's name and trademark and the purported location of Defendants. These actions are willfully targeted to attract customers interested in Paka and its goods and confuse and mislead the visitors of the Infringing Store into purchasing from Defendants.

12.     In addition to operating the Infringing Store, Defendants have created other online accounts that impersonate Paka by using confusingly similar variations of Paka's name and trademarks. Upon information and belief, Defendants operate and promote Defendants' Infringing Store through the websites, https://www.instagram.com/pacas.apparel/?hl=en and https://www.facebook.com/pacas.apparel/ (collectively, the "Infringing Accounts"). In addition, upon information and belief, Defendants are using the registered PAKA mark without authorization in connection with its Google Ads and are bidding on the PAKA trademark in its advertising.

13.     Defendants have caused rampant actual confusion and tarnished Paka's brand through, among other things:

(a)     trading off of Paka's PAKA trademark by using the infringing mark, PACAS;

(b)     selling inferior goods under the PACAS mark that are not made of 100% alpaca fiber as advertised;

(c)     siphoning off sales that would otherwise be made by Paka;

(d)     purposefully confusing and redirecting customers away from the Paka Online Store and to Defendants' Infringing Store; and

(e)    engaging in such poor customer service that Defendants have earned an "F" from the Better Business Bureau.

14.    Paka has been, and continues to be, irreparably damaged through the confusion by members of the public, dilution, and tarnishing of its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## II. NATURE OF THE ACTION

15.    This is a civil action for (i) trademark infringement of Paka's federally registered marks under the Lanham Act, 15 U.S.C. § 1114(1); (ii) trademark infringement of Paka's trademark rights, and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); (iii) Illinois common law trademark infringement and unfair competition; and (iv) violation of the Illinois Uniform Deceptive Trade Practices Act 815 ILCS §§ 510, *et seq*.

## III. JURISDICTION AND VENUE

16.    This Court has original subject matter jurisdiction over the claims that relate to trademark infringement, and false designation of origin under the Lanham Act pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1338(b).

17.    This Court also has supplemental jurisdiction over the claims in this Complaint which arise under state statutory and common law pursuant to 28 U.S.C. § 1367(a), because these state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

18.    Plaintiff, Paka Apparel, Inc., is a Delaware corporation having its principal place of business at 10606 Willis Loop, Austin, Texas 78717.

19.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(1). Defendants, Pacas, Inc. and Gekks, Inc., each resides at 39 Chestnut Avenue, Westmont, Illinois 60559, which is within this Judicial District.

20.     Venue is also proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial portion of the events complained of herein took place in this Judicial District and the State of Illinois. Defendants directly target their commercial activities toward consumers located in this Judicial District (as well as the State of Illinois and throughout the United States). In particular, the Infringing Store operated by Defendants is fully interactive and purports to ship products to customers located in this Judicial District (as well as the State of Illinois and throughout the United States), lists prices in U.S. Dollars, purports to accept payment in U.S. dollars, and, on information and belief, has sold products using infringing versions of Paka's federally registered trademark to residents of Illinois.

### IV. THE PARTIES

**A.     Plaintiff, Paka Apparel, Inc.**

21.     Paka is an online retailer of ethically-sourced, organic, and sustainable alpaca wool-based products. In particular, Paka operates its online retail store website offering alpaca wool sweaters, socks, hats, and pants through its domain name www.pakaapparel.com. An excerpt from the Paka Online Store is provided below:



22.     Paka incorporates its distinctive trademark, "PAKA," substantially throughout its marketing and the Paka Online Store.

23.     Plaintiff owns common law trademark rights in the PAKA trademark going back to at least its first use in 2016.

24.     Plaintiff has also registered its PAKA trademark with the United States Patent and Trademark Office as U.S. Trademark Registration No. 5,364,042. A true and correct copy of the Registration Certificate for the PAKA trademark is included in **Exhibit 1** attached hereto (the "Paka Registration"). The Paka Registration was registered on December 26, 2017 and covers "Clothing, namely, t-shirts, shirts, sweat shirts, jackets, hooded sweat shirts, sweaters, pants, shorts; Sweaters made in whole or in substantial part of alpaca; Headwear, namely hats, caps, beanies" in International Class 25.

25.     The Paka Registration is valid, subsisting, and is in full force and effect.

26.     The Paka Registration constitutes conclusive evidence of the validity and registration of the PAKA trademark and of Paka's ownership and exclusive right to use the PAKA trademark.

27.     Paka has exclusively and continuously used its PAKA trademark since 2016 and has not abandoned its PAKA trademark.

28.     The PAKA trademark is exclusively used by Paka. Paka uses its PAKA trademark extensively on its online retail store located at the Paka Domain Name, in select retailers across the United States, and Paka's marketing and promotional materials. Paka has extensively promoted and advertised its business, featuring the PAKA trademark, spending millions of dollars on advertising, marketing and promotion since 2016.

29.     The PAKA trademark is inherently distinctive when used in connection with Paka's retail business. The PAKA trademark signifies to the public that, when they buy Paka products, they will receive the highest quality goods. Paka has painstakingly ensured that its goods offered under the PAKA trademark are at all times provided to the highest-quality standards, and which support important social causes, such as empowering the local women of Peru. The PAKA trademark has achieved substantial recognition throughout the United States, which has only added to the inherent distinctiveness of the PAKA trademark. As such, the goodwill associated with the PAKA trademark is of incalculable value to Plaintiff.

30.     Sales made through Paka's online retail business available through the Paka Domain Name and Paka Online Store represent the majority of Paka's business. In addition, Paka's e-commerce website available at the Paka Domain Name features Paka's proprietary clothing, content, images and designs.

31.     Paka's relentless focus on offering the highest quality customer goods has enabled Paka to achieve widespread recognition and fame and has made the PAKA trademark one of the most well-known marks in Paka's industry. The widespread fame, outstanding reputation, sense of community, and significant goodwill associated with Paka's name and the PAKA trademark have made these incalculably valuable assets to Paka.

32.     Paka has received significant media attention, including appearances and articles with NBC,[2] *Women's Wear Daily*,[3] Shopify,[4] *UVA Today*,[5] and the *Wall Street Journal*.[6] Paka has also been awarded an "A" rating from the Better Business Bureau.[7]

33.     Paka has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the PAKA trademark. As a result, the PAKA trademark is widely recognized and exclusively associated by consumers, the public, and the trade as signifying the high-quality services offered by Paka.

---

[2] Katie Streit, *Apparel Company Brings Alpacas to Ashland Spreading Sustainable Message*, NBC5 (Nov. 11, 2020), https://kobi5.com/news/local-news/company-looks-at-sustainable-material-for-clothing-line-140383/.

[3] Emily Mercer, *Paka Apparel Launches 'Breathe by Paka' Activewear*, WWD (Nov. 17, 2021, 1:08 PM), https://wwd.com/fashion-news/fashion-scoops/paka-apparel-breathe-by-paka-activewear-1234998619/.

[4] Kristen LaFrance, *Kris Cody of Paka on Creating Connection and a Sustainable Future With Alpacas*, SHOPIFY (Jan. 11, 2021), https://www.shopify.com/retail/paka-apparel.

[5] Katie McNally, *This Student's Clothing Company is Dyed in the Wool of Ancient Cusco*, UVATODAY (Oct. 2, 2017), https://news.virginia.edu/content/students-clothing-company-dyed-wool-ancient-cusco.

[6] Barbara Haislip, *When Entrepreneurs Get Creative in Raising Funds*, WALL ST. J. (Nov. 25, 2018, 10:07 PM), https://www.wsj.com/articles/when-entrepreneurs-get-creative-in-raising-funds-1543201620.

[7] *Paka Apparel*, BETTER BUS. BUREAU, https://www.bbb.org/us/va/troy/profile/online-retailer/paka-apparel-0603-63412979 (last visited April 13, 2022).

34.     Importantly, the PAKA trademark, brand and reputation is tied to its status as a

Certified B Corporation as Paka is heavily invested in multiple social causes. Specifically,

Paka's Domain Name includes the following Mission Statement:

> Paka was created to bring you closer to where your clothing comes
> from, what it's made of, and who made it. Nature holds all the
> answers we need, and through evolution has created the natural
> technology found in our materials today.

35.     As such, Paka closely works alongside more than 100 Quechua women weavers

to preserve Inca traditions. Each of Paka's products includes a handwoven identification that is

made on a handloom in the Sacred Valley of Peru.

36.     In conjunction with its Mission Statement, Paka works closely with

underprivileged Peruvian women and children to improve social conditions.

37.     Paka has partnered with Peru's Ministry of Vulnerable Populations (MIMP) to

guarantee single mothers coming from domestic violence and sexual abuse a life free of violence

and discrimination.

38.     Paka has also partnered with The Centro de Textiles Tradicionales del Cusco

(CTTC), a non-profit organization established in 1996 by Andean weavers. Paka and CTTC

work together to provide over 100 women with a stable income. Specifically, Paka teaches each

woman to weave for free, which allows more women to move from manual, unskilled labor to

passionate, skilled work.

39.     Paka aims to multiply each weaver's daily income by four times the standard

family living wage to increase Peruvian women's decision-making power, ability to feed their

children, and obtain medical care when necessary.

40.     Beyond the monetary benefit, the work helps sustain Inca heritage and culture and is a tradition that can be passed down with pride and respect to carry forth the Incan knowledge and ways.

41.     Additionally, Paka has partnered with the "Wawa Wasi" daycares, which include full-time supervision and a trained psychologist for children in the region, as well as Peruvian Hearts, an NGO devoted to girls' education in Peru.

42.     Paka donates 2% of its annual revenues to supporting the education and ambitions of underprivileged Peruvian young women. So far, Paka has helped send six Peruvian young women to university.

43.     Paka products are also environmentally friendly and efficient. Paka has offset 900,000 pounds of $CO_2$ to make a product that is as carbon neutral as possible. Paka uses fiber from alpacas to craft its goods and maintain an environmentally-friendly business model.

44.     Paka's package shipments are fully biodegradable and compostable.

45.     Paka's products sold and marketed under the PAKA trademark include sustainable and proprietary blends of alpaca fiber and are transparently identified to each customer.

**B.     Defendants, Pacas, Inc. and Gekks, Inc.**

46.     Defendant, Pacas, Inc. is located at 39 Chestnut Avenue, Westmont, Illinois 60559. On information and belief, Pacas, Inc. operates an infringing online retail store at the URL www.pacas.com.

47.     Defendant, Gekks, Inc. is located at 39 Chestnut Avenue, Westmont, Illinois 60559. Gekks, Inc. is listed as the owner of U.S. Trademark Application Serial No. 90/236,684 for PACAS ("the '684 Application"). **Exhibit 2** is a copy of the '684 Application.

48.     Upon information and believe, Defendants own the Infringing Domain Name, operate the online retail website available through the Infringing Domain Name, and/or operate the Infringing Accounts.

49.     Defendants commenced their business operations no earlier than 2020, years after Paka received its federal registration for the PAKA trademark conferring on Paka prior rights across the United States.

50.     Defendants' business is characterized by misrepresenting the quality of its goods and trading off of Paka's PAKA trademark.

51.     Defendants' socks are not 100% alpaca wool and are falsely advertised, as one confused customer relates:



52.     Unlike Paka, Defendants have consistently engaged in poor customer service practices, to the extent that they have received an "F" rating from the Better Business Bureau:



53.     Paka has received voluminous complaints from consumers who were dissatisfied with Defendants' goods and customer service, each of whom believed they had purchased goods and services from Paka rather than Defendants.

## V. DEFENDANTS' INFRINGING ACTIVITIES

54.     Defendants are engaged in operating the Infringing Store through the Infringing Domain Name, which is owned by one or more Defendants. The Infringing Store purports to offer alpaca wool-based apparel, including socks and hats. An excerpt from the Infringing Store is provided below:



55.     Without permission or consent from Paka, Defendants are using the PACAS trademark in a manner that creates confusion with Paka's federally registered PAKA trademark.

56.     The Infringing Domain Name used by Defendants to operate the Infringing Store is a confusingly similar variation of the PAKA trademark. The Infringing Domain Name differs from the Paka Domain Name only slightly. Specifically, the Infringing Domain Name uses the confusingly similar term "pacas" in place of the "paka" term.

57.     Although the Infringing Domain Name does not use the term "apparel," Defendants have used Google Ads to bid on the PAKA trademark, and the terms "paka apparel" as shown below:

14

3



58. Confusion is not just limited to customers. Paka has received inquiries from confused alpaca wool suppliers about purchase orders sent to them from Defendants, thinking they came from Paka.

59. The Infringing Store uses confusingly similar variations of the PAKA mark. As with the Infringing Domain Name, the confusingly similar mark differs only in that it replaces the "C" in "Paka" and adds an "S" to the end of the mark. Images of Paka's online retail store and the Infringing Store are reproduced below:

## PAKA'S WEBSITE[8]



**3x** lighter than sheep's wool



moisture-wicking

alpaca's water retention rate is around 8%, compared to 16-20% of most other wool. while not waterproof, it's considered water-repellent.

(almost) as warm as polar bear fur



alpaca fiber is medullated with hollow air pockets that hold heat in.

soft as cashmere

alpaca is hypoallergenic, meaning it doesn't have that itchy grease (lanolin) in other wools. additionally, we use royal alpaca - the top 1% selection of fiber (18-19 microns).

## THE INFRINGING WEBSITE[9]




### WARMER THAN WOOL

5x warmer than wool. Take that, sheeple!

### MOISTURE WICKING

doesn't absorb ba-a-a-ad moisture, unlike wool


### THERMOREGULATING

alpaca fiber has a hollow core, which insulates heat in the winter and helps keep it cool in the summer


### HYPOALLERGENIC

doesn't contain lanolin, which is a natural oil that causes allergies



---

[8] PAKA, https://www.pakaapparel.com/pages/alpaca (last visited April 13, 2022)
[9] PACAS, https://www.pacas.com/ (last visited April 13, 2022)

**PAKA'S WEBSITE[8]**                              **THE INFRINGING WEBSITE[9]**



alpacas nibble only the tops of grasses and other plants; they do not rip plants out of the ground, allowing the vegetation to grow back.

Like their fellow grazers, alpacas eat grass and plants that grow natural in their habitat. The key difference is alpacas only eat the tops of grass strands, which helps keep their coats so soft and means their food source needs less replenishing than that of goats, sheep, or cow.

60.     As shown above on the Infringing Store, Defendants are using a confusingly similar mark to the PAKA trademark without permission and in a manner that is likely to create confusion as to Defendants' affiliation with Paka. This unauthorized use of a confusingly similar mark to the PAKA trademark used on and in connection with Defendants' online retail business featuring the sale of alpaca wool-based apparel is confusingly similar to the PAKA trademark.

61.     Moreover, Defendants' are using a confusingly similar mark in their online advertising campaign. Images of Paka's online advertising and Defendants' online advertising are reproduced below:

17

| **PAKA'S ONLINE ADVERTISEMENTS** | **THE INFRINGING ONLINE ADVERTISEMENTS** |
|---|---|
| "SOFTER THAN CASHMERE, WARMER THAN WOOL" | "WARMER THAN WOOL, SOFTER THAN CASHMERE" |





"BUTTERY-SOFT"

"BUTTERY-SOFT"





62.     Upon information and belief, Defendants' actions alleged herein are intended to cause confusion, mistake, or deception as to the source of Defendants' goods and services and are intended to cause consumers and potential customers to believe that Defendants' business and the goods and services that it offers are associated with Paka, when they are not.

63.     Indeed, even if Defendants' business were legitimate, Defendants had a duty to avoid confusion with Paka and the PAKA trademark because Defendants entered the market after Paka. Nevertheless, Defendants have purposely sold, promoted, marketed, distributed, and/or offered their goods and services in a manner that causes a likelihood of confusion with Paka and the PAKA trademark.

64.     In addition, Defendants' infringing conduct has resulted in actual confusion. Many individuals have inquired to Paka whether Defendants' Infringing Store is associated or affiliated with Paka. Several of these instances of actual confusion have been attached hereto as **Exhibit 3**. This actual confusion has caused and continues to cause substantial injury to Paka's business reputation and goodwill.

65.     A few of the many examples of actual confusion include at least the following:

(a)     On November 26, 2021, a customer inquired of an order ordered through Defendants: "I have sent a few emails. I received an order that says delivered, but only half was in the bag when I opened it. I am trying to find out what is going on with the other half. It's for a stocking stuffers [sic] so I would like to know if I'm getting it on time or not."

(b)     On December 21, 2021, a customer sent a complaint about an order purchased through Defendants: "Attention Customer Service I just received my Pollyanna gift of Pacacas Socks 3 Pairs of ankle and 2 low cuts , back of your package you show 5 symbols , one of them being 'Water Proof ' FALSE FALSE I put sock to test and they are not Water Proof as Symbol States need to change wording FALSE ADVERTISING"

(c)     On January 6, 2022, another customer complained about a missing shipment from Defendants: "Hello, This is my 3rd email in regards to my order above. I purchased qty 2. 2-pk of women's socks for Xmas presents. I received qty 1 2 pk

of women's socks. Please respond or I will contact the CC company for a refund myself on this order. Live [sic] your product but your company's customer service SUCKS, IS SLOW AND LACKING." After being told by the Paka customer service representative, Paris, that he had ordered from the wrong company, the customer responded, "Paris, Holy Crap. Wrong company. My sincerest apologies. Ther order was for Paca. I am sorry. I have one of your Hoodies and love it."

(d)     On November 27, 2021, a customer inquired to Paka about an order he had just placed through Defendants: "Hi, I placed an order today (Order No. #252331) and a couple of hours later I received an email from you promoting your Black Friday sale (Pacas Sat 11/27/2021 1:46 PM) Will you please apply BF25 of BF30 to my order, whichever applys [sic]? I am also particularly interested in the 2 day free FedEx shipping."

66.     The examples of actual confusion received by Paka are only the tip of the iceberg. Defendants acknowledge that they, too, have received inquiries from consumers who confused Defendants with Paka. *See* Pacas Letter of April 5, 2022, attached as **Exhibit 4**.

67.     The injury to Paka's business reputation and goodwill is particularly harmful given Defendants' negative business reputation and lack of goodwill.

68.     Paka has had to spend enormous resources dealing with angry and disappointed customers whose negative experiences have been projected onto Paka but whose experiences were entirely based on the acts of the Defendants.

69.     By virtue of the acts complained of herein, Defendants have created a likelihood of injury to Paka's business reputation and goodwill, caused actual confusion, caused a likelihood of consumer confusion, mistake, and deception as to the source of origin or relationship of Paka's goods and Defendants' goods, and have otherwise competed unfairly with Paka by unlawfully trading on and using the PAKA trademark without Paka's permission or consent.

## VI.    DEFENDANTS' WILLFUL ACTS

70.    Defendants' infringement of the PAKA trademark has been knowing and willful since at least March 8, 2022.

71.    On March 8, 2022, Paka sent a cease and desist letter to Pacas identifying Paka's rights in the PAKA trademark, examples of actual consumer confusion and other questionable practices. A copy of that letter is attached as **Exhibit 5**.

72.    On April 5, 2022, Defendants responded acknowledging that their use of the infringing PACAS mark began in September 2020—after Paka had already made substantial national use of the PAKA trademark and years after the PAKA trademark registered. A copy of that letter is attached as **Exhibit 4**.

73.    Defendants also admitted to confusion by its own consumers in their April 5 letter attached as **Exhibit 4**.

74.    Defendants also admitted that the mark "PACAS" is likely to cause confusion with the PAKA trademark.

75.    Defendants characterized the confusion as Paka infringing and causing confusion with Defendants' "PACAS" mark.

76.    Defendants' characterization is wholly illegitimate. Paka has prior rights in the PAKA trademark, and Defendants have no rights to the infringing mark, "PACAS."

77.    All of Defendants' alleged confusion is, and can only be, a result of Defendants' infringing use of the word "PACAS."

78.    Upon information and belief, Defendants' acts complained of herein are willful and deliberate.

21

79.     Defendants' acts complained of herein have caused damage to Paka, and such damages will continue to increase unless Pacas is enjoined from its wrongful acts and infringement.

80.     Defendants' acts complained of herein have caused Paka to suffer irreparable injury to its business and goodwill. Paka will continue to suffer substantial loss of goodwill and reputation unless and until Defendants are preliminarily and permanently enjoined from the wrongful acts complained of herein.

**COUNT I**
**TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

81.     Paka hereby repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

82.     This is a trademark infringement action against Defendants arising under 15 U.S.C. § 1114.

83.     Paka is the exclusive owner of the federally registered PAKA trademark, U.S. Trademark Registration No. 5,364,042.

84.     Defendants' use in commerce of the word PACAS constitutes a reproduction, counterfeit, copy, or colorable imitation of the registered PAKA trademark in connection with the sale, offering for sale, distribution, or advertising of its goods, which use is likely to cause confusion, or to cause mistake, or to deceive.

85.     Defendants' use in commerce of the word PACAS constitutes a reproduction, counterfeit, copy, or colorable imitation of the registered PAKA trademark.

86.     Defendants have and continue to apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements

intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of its goods.

87.     Such use of the word PACAS is likely to cause confusion, or to cause mistake, or to deceive.

88.     Upon information and belief, Defendants have knowledge of Paka's rights in the PAKA trademark, and are willfully infringing using confusingly similar variations of the PAKA trademark. Defendants' willful, intentional, and unauthorized use of the PAKA trademark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of Defendants' goods among the general public.

89.     Defendants' activities constitute willful trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

90.     Paka has no adequate remedy at law, and if Defendants' actions are not enjoined, Paka will continue to suffer irreparable harm to its reputation and the goodwill of its PAKA trademark.

91.     The injuries and damages sustained by Paka have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of goods and services using counterfeits and confusingly similar reproductions of the PAKA trademark.

## COUNT II
## TRADEMARK INFRINGEMENT, FALSE DESIGNATION OF ORIGIN
## UNDER 15 U.S.C. § 1125(a)

92.     Paka hereby repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

93. Defendants' promotion, marketing, offering for sale, and sale of confusingly similar imitations of the PAKA trademark has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association of Defendants with Paka or the origin, sponsorship, or approval of Defendants' goods and services by Paka.

94. By using the PAKA trademark in connection with Defendants' goods, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of Defendants' goods.

95. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of Defendants' goods and services to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125(a).

96. Paka has no adequate remedy at law and, if Defendants' actions are not enjoined, Paka will continue to suffer irreparable harm to its reputation and the goodwill associated with its PAKA mark.

## COUNT III
## WILLFUL INFRINGEMENT

97. Paka hereby repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

98. Defendants' infringement of the PAKA trademark has been willful and deliberate.

## COUNT IV
## VIOLATION OF ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT
## UNDER 815 ILCS §§ 510, *ET SEQ.*

99. Paka hereby repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

100.     Defendants have engaged in acts violating Illinois law including, but not limited to, passing off their goods and services as those of Paka, causing a likelihood of confusion and/or misunderstanding as to the source of their goods, causing a likelihood of confusion and/or misunderstanding as to an affiliation, connection, or association with Paka, representing that their goods and services have Paka's approval when they do not, and engaging in other conduct which creates a likelihood of confusion or misunderstanding among the public.

101.     The foregoing Defendants' acts constitute a willful violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510, *et seq*.

102.     Paka has no adequate remedy at law, and Defendants' conduct has caused Paka to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Paka will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT V**
**COMMON LAW TRADEMARK INFRINGEMENT AND UNFAIR COMPETITION**

103.     Paka hereby repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

104.     Paka owns all rights, title, and interest in and to the PAKA trademark, including all common law rights in such marks.

105.     Defendants, without authorization from Paka, have used and are continuing to use marks that are substantially indistinguishable from or confusingly similar to the PAKA trademark.

106.     The foregoing acts of Defendants are intended to cause, have caused, and are likely to continue to cause confusion, mistake, and deception among customers, potential customers, the public, and trade as to whether Defendants' goods originate from, or are affiliated with, sponsored by, or endorsed by Paka.

107.     Defendants' acts constitute trademark infringement and unfair competition in violation of common law of the State of Illinois.

108.     By the acts described above, Defendants have engaged in unfair competition in violation of the common law of the State of Illinois.

109.     Paka has no adequate remedy at law, and Defendants' conduct has caused Paka to suffer damage to its reputation and goodwill. Unless enjoined by the Court, Paka will suffer future irreparable harm as a direct result of Defendants' unlawful activities.

**COUNT VI**
**EQUITABLE RELIEF – ORDER OF ABANDONMENT OF THE '684 APPLICATION**

110.     Paka hereby repeats, realleges, and incorporates by reference the allegations set forth in the preceding paragraphs as though fully set forth herein.

111.     Defendants are not entitled to registration of the trademark PACAS as set forth in the '684 Application as the same is confusingly similar to Paka's prior registered PAKA trademark, U.S. Trademark Registration No. 5,364,042 under 15 U.S.C. § 1052(d).

112.      Defendants' '684 Application has been allowed, but is pending a Statement of Use to proceed to registration.

113.     In allowing the '684 Application, the U.S. Patent and Trademark Office failed to locate the PAKA trademark, and therefore erroneously allowed the '684 Application.

114.     Paka would be harmed by the registration of Defendants' registration of the mark PACAS, which mark is confusingly similar to the PAKA trademark and is already causing actual confusion in the marketplace.

115.     Paka is entitled to injunctive relief ordering that Defendants be enjoined from further prosecuting the '684 Application, including enjoining the filing of a Statement of Use or, alternatively, ordering Defendants to abandon the '684 Application.

## PRAYER FOR RELIEF

WHEREFORE, Paka prays for judgment against Defendants as follows:

1.      That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      (a)      using the PAKA trademark, the word PACAS, or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any goods or services without authorization from Paka;

      (b)      passing off, inducing, or enabling others to sell or pass off any good or service as a genuine good or service offered by Paka, that is not Paka's or not produced under the authorization, control, or supervision of Paka and approved by Paka for sale under the PAKA trademark;

      (c)      committing any acts calculated to cause consumers to believe that Defendants' goods are those sold under the authorization, control, or supervision of Paka, or are sponsored by, approved by, or otherwise connected with Paka;

      (d)      further prosecuting the '684 Application, including enjoining the filing of a Statement of Use or, alternatively, ordering Defendants to abandon the '684 Application;

      (e)      further infringing the PAKA trademark and damaging Paka's goodwill;

      (f)      aiding, abetting, or assisting any other person in doing any act prohibited by the foregoing subparagraphs, including, but not limited to, selling,

assigning, or transferring Defendants' business or related goods or materials; and

(g)     effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in the subparagraphs above.

2.     That all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of Defendants, bearing the PAKA trademark or the infringing PACAS mark, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed pursuant to 15 U.S.C. § 1118.

3.     That Paka be awarded Defendants' profits, all damages sustained by Paka, and the costs of this action pursuant to 15 U.S.C. § 1117(a).

4.     That the Court order, for purposes of deterrence, Defendants to pay Paka punitive damages in the amount of at least $50,000.

5.     That Paka be awarded prejudgment and post-judgment interest on all monetary awards in the amount not less than the maximum amount allowable.

6.     A declaration that this case is exceptional, that Defendants' infringement has been willful, and an award of Paka its reasonable attorneys' fees and costs.

7.     Award any and all other relief that this Court deems just and proper.

## JURY TRIAL DEMAND

Paka respectfully demands a trial by jury on all claims and issues so triable.

Date: April 13, 2022                                    Respectfully submitted,

                                                        VEDDER PRICE P.C.

                                                         /s/ *Daniel H. Shulman*
                                                        Daniel H. Shulman

28

222 N. LaSalle St.
26th Floor
Chicago, Illinois 60601
(312) 609-7500
dshulman@vedderprice.com

*Attorneys for Plaintiff, Paka Apparel, Inc.*